UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

DANIELLE DICRISTOFORO and          :
ROBERT DICRISTOFORO,               :
    Plaintiffs,                    :
                                   :
    v.                             :          C.A. No. 20-456-JJM-PAS
                                   :
FERTILITY SOLUTIONS, P.C.;         :
ANIA KOWALIK, M.D.;                :
CAROL ANANIA, M.D.;                :
JOHN and/or JANE DOE, M.D.;        :
And JOHN DOE CORPORATION,          :
    Defendants.                    :

**MEMORANDUM AND ORDER**

PATRICIA A. SULLIVAN, United States Magistrate Judge.

Now pending before the Court are two motions.  First is the motion of Defendants,

Fertility Solutions, P.C. ("Fertility"), Dr. Ania Kowalik, and Dr. Carol Anania, to disqualify an

obstetric radiologist, Dr. Peter Doubilet, who recently was disclosed as a testifying expert by

Plaintiffs, Danielle and Robert DiCristoforo.  ECF No. 39.  Second is the motion of Defendant

Dr. Anania to strike Dr. Doubilet's affidavit (ECF No. 47) from the docket.  ECF No. 48.[1]  Both

motions have been referred to me for determination.

I.        **Procedural and Factual Background**

Plaintiffs (the DiCristoforos) are husband and wife.  This case arises from the allegedly

tragic outcome of Plaintiff Danielle DiCristoforo's treatment at Fertility.  The DiCristoforos

claim that, in 2018, Ms. DiCristoforo's ultrasound imaging and other signs and symptoms were

negligently misinterpreted as an ectopic pregnancy and negligently treated by the administration

---

[1] The motion to strike was filed the day before the Court's hearing on the motion to disqualify so that Plaintiffs did not have an opportunity to file a written opposition.  Plaintiffs agreed that its merits could be addressed during the hearing.  Therefore, despite the lack of a written opposition to the motion to strike, both motions are ripe for determination.

of a toxic medication, causing Ms. DiCristoforo to lose what was actually a potentially viable

intrauterine pregnancy; she has since become infertile.  The DiCristoforos filed this case on

October 21, 2020.  Procedurally, the parties have completed fact discovery; the case is now in

the expert discovery phase, which is presently set to close soon, on January 27, 2023.  Text

Order of Nov. 29, 2022.  But for the pending motion to disqualify, the case is close to being

ready to proceed in an orderly way through the dispositive motion phase to trial.

Approximately eight months before the case was filed, two Defendants (Fertility and Dr.

Kowalik) – but not the third Defendant, Dr. Anania – engaged an obstetric radiologist, Dr. Carol

Benson, to review the case on their behalf.  ECF No. 40 at 4.  Dr. Benson met with counsel,

reviewed documents and provided an opinion for which she was compensated.  Id.  After receipt

of this opinion, Fertility and Dr. Kowalik opted not to rely on Dr. Benson as a testifying expert at

trial.  Id.; ECF No. 40-3.  Dr. Benson's invoice is dated February 10, 2020.  ECF No. 40-2 at 1.

A year later, on February 23, 2021, counsel for Dr. Anania, unaware of her co-

Defendants' engagement of Dr. Benson, sent an unsolicited email to Dr. Benson's *husband*, Dr.

Peter Doubilet, also an obstetric radiologist, asking him to review the case.  See ECF Nos. 40 at

4; 47 ¶ 3.  The parties agree that Dr. Benson and Dr. Doubilet not only are husband and wife, but

also are close professional colleagues, with affiliations that include not just working at the same

place but also numerous (more than one hundred according to Dr. Doubilet's lengthy and

impressive curriculum vitae) joint projects, including co-authored books, chapters, articles and

abstracts, many dealing with the topic of ultrasound and pregnancy.  See ECF No. 40-5.  The

Court has reviewed the February 23, 2021, email, and those that followed, *in camera*.[2]  As

---

[2] To ensure that this submission is part of the record, the Court hereby directs the Clerk to file it under seal as "Defendants' *in camera ex parte* submission in connection with the motion to disqualify," with access limited to the Court only.

summarized by Defendants in their unsealed brief, the initial email asks Dr. Doubilet if he would

review the case on behalf of the inquiring attorney's client (who is not named).  ECF No. 40 at 8.

The email is captioned with the name of this case and contains a sentence that briefly and

neutrally summarizes the publicly filed complaint's allegations against Dr. Anania; it also

succinctly sets out the precise scope of the review that Dr. Doubilet was being asked to perform.

The email is not labeled as confidential or as containing attorney work product.  It does not ask

Dr. Doubilet to keep any aspect of its content confidential.  Beyond the foregoing, it contains no

analysis, interpretation, strategy or facts related to the case; no documents are attached to it.

Dr. Doubilet responded with a brief email the same day.  He informed the inquiring

attorney that, in February 2020, his wife, Dr. Benson, had been contacted about the case on

behalf of Dr. Kowalik and had met with an attorney.  See ECF No. 40 at 4-5, 8.  On the

following day, February 24, 2021, counsel for Dr. Anania advised Dr. Doubilet by email that she

was electing not to proceed in light of his relationship with Dr. Benson.  Id.  Dr. Doubilet

responded by email that he had expected that to be the case.  Id.  There is no evidence that Dr.

Doubilet had any other communications with counsel for Defendants regarding this case.  Dr.

Doubilet and Dr. Benson had no discussions regarding any aspect of this case beyond her

advising him (in response to his inquiry triggered by the February 23, 2021, email from Dr.

Anania's attorney) that she had been contacted by and met with counsel for Dr. Kowalik about

the case.  ECF No. 47 ¶¶ 4, 8.

One year later, in March 2022, with no suggestion that he was aware either of the

engagement of Dr. Benson by Dr. Kowalik or of the approach to Dr. Doubilet by Dr. Anania,

counsel for Plaintiffs asked Dr. Doubilet to perform a "blind" review of the ultrasound images in

issue.  ECF Nos. 45 at 6; 47 ¶ 6.  This initial request for review was "blind"[3] to the extent that

Dr. Doubilet was not told the identity of the patient or the treating providers or any of the

underlying facts or the caption of the case or even that the review was in connection with

treatment that was the subject of litigation.  As Dr. Doubilet has averred in his affidavit, this

"blind" inquiry from Plaintiffs triggered no recollection of the email solicitation by Defendant

Dr. Anania just over a year prior.  ECF No. 47 ¶ 6.  He agreed to take on the matter.  Id.

Following his "blind" review, on October 31, 2022, Dr. Doubilet signed his expert report,

expressing his opinion that Dr. Kowalik and Fertility's Dr. Huang (but not Dr. Anania) violated

the pertinent standard of care.  ECF No. 40-1 at 6.  Plaintiffs provided Dr. Doubilet's report to

Defendants as part of their timely Fed. R. Civ. P. 26(a)(2) expert disclosures.  Two weeks later,

Defendants filed the instant motion to disqualify Dr. Doubilet as an expert for Plaintiffs.

Defendants have presented nothing to overcome Plaintiffs' contention (supported by Dr.

Doubilet's affidavit) that, because of the "blind" approach that Plaintiffs used to present the case

to Dr. Doubilet, whatever information he then possessed as a result of Defendants' contacts with

himself and his wife has caused no prejudice in that it could not have been used by or influenced

Dr. Doubilet as he was forming his opinions.  See ECF No. 47 ¶ 8.  The Court further finds that

this is not a circumstance where any of the pertinent actors engaged in any wrongful conduct or

sharp practice.  To the contrary, it appears that the attorneys, Dr. Doubilet and Dr. Benson all

conducted themselves with appropriate professionalism.

Defendants nevertheless ask the Court to focus on the mere fact that Dr. Doubilet has

possession of the following work product: (1) he knows the identity of at least one non-testifying

expert in that he was aware that counsel for Dr. Kowalik contacted Dr. Benson, an obstetric

---

[3] Plaintiffs represent that their use of this "blind" approach was generally, though not precisely, based on what at least one commentator has recommended as best practice.  ECF No. 45 at 5.

radiologist, about this case and met with her, and he now knows (because of the content of

Defendants' unsealed motion to disqualify him) that Dr. Benson performed a review and formed

an opinion but Dr. Kowalik did not engage her as a testifying expert; and (2) he knows of Dr.

Anania's overture to himself as set out in the February 23, 2021, email, including the task he was

being asked to perform as an obstetric radiologist.  Defendants contend that Dr. Doubilet's

awareness of this protected information compels a blanket Order disqualifying him from

testifying on behalf of Plaintiffs to any of the opinions in his expert report.  Defendants rely on

the two-part test in the seminal decision on expert disqualification, Koch Ref. Co. v. Jennifer L.

Boudreaux, M/V, 85 F.3d 1178, 1181 (5th Cir. 1996), as well as on considerations of fairness

and judicial integrity.  Defendants acknowledge that the granting of this motion would seriously

disrupt the case in that it would require the Court to reset the schedule to allow Plaintiffs time to

find a new testifying expert, procure an opinion and a report, as well as to allow Defendants time

to respond to the new opinion.

## II.     Applicable Law

"[F]ederal courts have inherent authority to disqualify experts 'if necessary to preserve

public confidence in the fairness and integrity of the judicial system.'"  Lacroix v. BIC Corp.,

339 F. Supp. 2d 196, 199-200 (D. Mass. 2004) (quoting Koch Ref. Co., 85 F.3d at 1181); see

Campbell Industries v. M/V Gemini, 619 F.2d 24, 27 (9th Cir. 1980) ("A district court is vested

with broad discretion to make discovery and evidentiary rulings conducive to the conduct of a

fair and orderly trial" including disqualifying expert testimony.).  Nevertheless, courts are

generally reluctant to disqualify expert witnesses particularly where there has been no improper

or troubling conduct by counsel or the expert, or when the expert is a physician with specialized

knowledge.  Koch Ref. Co., 85 F.3d at 1183 (noting "troubl[ing]" conduct and finding

disqualification was not abuse of discretion "under this very limited and specific scenario");

Palmer v. Ozbek, 144 F.R.D. 66, 67 (D. Md. 1992) ("courts are generally reluctant to disqualify

expert witnesses, especially those . . . who possess useful specialized knowledge").

       Disqualification of an expert is appropriate when a party retains an expert who previously

worked for an adversary and received confidential information from the first client, so-called

side-switching.  Koch Ref. Co., 85 F.3d at 1181.  In cases other than side-switching, courts

eschew a bright-line rule, instead examining:

    (1) [whether it] was objectively reasonable for the moving party to believe that it
        had [formed] a confidential relationship with the expert; and

    (2) whether the moving party disclosed confidential information to the expert that
        is relevant to the current litigation.

Lacroix, 339 F. Supp. 2d at 200-01; see also Koch Ref Co., 85 F.3d at 1811.  However, while

"[a]ffirmative answers to both inquiries [may] compel disqualification," disqualification "may

not be warranted even if the expert witness has signed a confidentiality agreement with the

adversary," because there may be "situations where, despite the existence of a formal contractual

relationship, so little of substance occurs during the course of the relationship that neither the

integrity of the trial process, nor the interests of the party who retained the expert, would be

served by blanket disqualification."  Lacroix, 339 F. Supp. 2d at 200 (internal quotation marks

omitted).

       Disqualification of an expert witness also may be appropriate if one side engages an

expert who is affiliated with an expert for the opposing party.  City of Springfield v. Rexnord

Corp., 111 F. Supp. 2d 71, 75 (D. Mass. 2000).  While courts have applied a similar two-part

inquiry to this line of cases, "they tend to ask the following overriding question: is there any

evidence that any substantive [confidential] information about the case has been exchanged

between the affiliated experts?"  Id.; see U.S. ex rel. Cherry Hill Convalescent Center, Inc. v.

Healthcare Rehab Systems, Inc., 994 F. Supp. 244, 249 (D.N.J. 1997) ("disqualification is not

warranted where no privilege or confidential information was passed").

In analyzing disqualification, the Court must balance "competing policy objectives and

consider[] concerns of fundamental fairness."  Lacroix, 339 F. Supp. 2d at 200.  Policy

objectives "favoring disqualification include preventing conflicts of interest and maintaining the

integrity of the judicial process," while policies disfavoring disqualification include "ensuring

that parties have access to expert witnesses who possess specialized knowledge and allowing

experts to pursue their professional calling."  Koch Refining Co., 85 F.3d at 1182-83.  The

moving party shoulders the burden of showing that disqualification is warranted.  Id. at 1181.

## III.   Analysis

### A.     Contact by Counsel for Dr. Anania with Dr. Doubilet

The Court begins by examining whether Dr. Doubilet's receipt of the February 23, 2021,

email from counsel for Defendant Dr. Anania justifies his disqualification as the testifying expert

for Plaintiffs.  Because Dr. Doubilet was never engaged by any Defendant, this is not a side-

switching situation; therefore, the Court's decision is guided by the two-factor test set out in

Koch Ref. Co., 85 F.3d at 1181.

The first Koch prong requires the Court to determine whether it was objectively

reasonable for the moving party to believe a confidential relationship was formed between the

moving party and the expert that "developed into a matter sufficiently substantial to make

disqualification or some other judicial remedy appropriate."  Lacroix, 339 F. Supp. 2d at 200

(internal quotation marks omitted).  In making this determination, the Court may consider

several factors, including:

whether the relationship was . . . long standing and involved frequent contacts instead of a single interaction with the expert, whether the expert is to be called as a witness in the underlying case, whether alleged confidential communications were from expert to party or vice-versa, and whether the moving party funded or directed the formation of the opinion to be offered at trial.  Other factors include whether the parties entered into a formal confidentiality agreement, whether the expert was retained to assist in the litigation, the number of meetings between the expert and the attorneys, whether work product was discussed or documents were provided to the expert, whether the expert was paid a fee, whether the expert was asked to agree not to discuss the case with the opposing parties or counsel, and whether the expert derived any of his specific ideas from work done under the direction of the retaining party.

Id. (internal citation and quotation marks omitted).  When "the expert met but once with counsel, was not retained, was not supplied with specific data relevant to the case, and was not requested to perform any services," reviewing courts decline to order disqualification.  Koch Ref. Co., 85 F.3d at 1182; see Mayer v. Dell, 139 F.R.D. 1, 3-4 (D.D.C. 1991).

Turning to the facts here, the Court finds that the electronic encounter between Dr. Doubilet and counsel for Dr. Anania on February 23, 2021, is insufficient to create the sort of objectively substantive confidential relationship that would meet the first Koch prong.  The attorney sent Dr. Doubilet an unsolicited email with nothing indicating any expectation of confidentiality.  After Dr. Doubilet demurred, advising of his wife's contact about the case, all communication ceased.  There was no consultation and no revelation of specific information related to the facts of the case (beyond a single-sentence barebones summary of what is on the public record).  This encounter is even less substantive than the single meeting that courts routinely reject as sufficient to trigger disqualification.  See Koch Ref. Co., 85 F.3d at 1182; Mayer, 139 F.R.D. at 3-4.  "[N]either the integrity of the trial process, nor the interests of the party who retained the expert, would be served by blanket disqualification" based on this fleeting encounter.  Lacroix, 339 F. Supp 2d at 200 (internal quotation marks omitted).  I find that

Defendants have failed to demonstrate that the February 23, 2021, email exchange satisfies the first Koch prong.

While the analysis could stop here, the Court also considers the second Koch prong, which requires an examination concerning whether the February 23, 2021, email exchange disclosed confidential information to Dr. Doubilet that is relevant to the current litigation. Id. at 200-201; Koch Ref. Co., 85 F.3d at 1181. Confidential information is "either [of] particular significance or [that] which can be readily identified as . . . attorney work product." Lacroix, 339 F. Supp. 2d at 200-201. It includes such matters as discussion of the party's "strategy in the litigation, the kinds of experts [the party] expected to retain, [the party's] view of the strengths and weaknesses of each side, the role of each of the [party's] experts to be hired and anticipated defenses." Id. at 201.

Based on my *in camera* review, the Court finds that the email sent to Dr. Doubilet on February 23, 2021, contains little more than a neutral summary of the publicly available complaint's claim against Dr. Anania. While this clearly is the work product[4] of an attorney in that the sentence was written by the attorney who sent the email, it displays no thought process, interpretation or analysis. The email also reveals that a Defendant in this case (Dr. Anania) was at least considering the possibility of consulting an obstetric radiologist, as well as that she deemed Dr. Doubilet to be potentially qualified as an expert to perform a review of a specific aspect of this case. This information undoubtedly qualifies for work-product protection. However, the confidentiality of this information is qualified in that counsel for Dr. Anania would

---

[4] The work-product rule protects "work done by an attorney in anticipation of . . . litigation from disclosure to the opposing party." Blattman v. Scaramellino, 891 F.3d 1, 4 (1st Cir. 2018). It affords "limited immunity from discovery and a qualified evidentiary privilege." Id. at 3 n.1 (emphasis added) (internal quotation marks omitted); see Linhares v. Woods Hole, Martha's Vineyard, & Nantucket Steamship Auth., Civil Action No. 1:20-CV-12035-IT, 2022 WL 17736800, at *5 (D. Mass. Dec. 16, 2022). Disclosure of work product to a third-party does not necessarily waive the protection; "only disclosing material in a way inconsistent with keeping it from an adversary waives work product protection." United States v. Mass. Inst. of Tech., 129 F.3d 681, 687 (1st Cir. 1997).

have expected Dr. Doubilet to reveal it to counsel for Plaintiffs if Plaintiffs' overture a year later

had not been "blind," just as it is clear that Dr. Doubilet acted appropriately when he revealed to

counsel for Dr. Anania that his wife had been contacted a year earlier by a different party in the

same case.  Moreover, this is information that Defendants themselves placed in the public record

when they moved to disqualify Dr. Doubilet without asking for leave to seal the portion of the

filing containing it, resulting in a waiver of its work-product protection at least for purposes of

this motion.[5]  See Eastman v. Thompson, 594 F. Supp. 3d 1156, 1187 (C.D. Cal. 2022) (work

product protection waived by court filing).  Therefore, in the circumstances of this case, I find

that Defendants have failed to demonstrate that the February 23, 2021, email exchange resulted

in the disclosure of confidential information sufficient to satisfy the second Koch prong.

### B.       Contact by Counsel for Dr. Kowalik with Dr. Benson

By contrast with Dr. Doubilet's contact with counsel for Dr. Anania, the other pertinent

encounter – the engagement by Dr. Kowalik of Dr. Benson, Dr. Doubilet's wife – is far more

substantive and has the potential to meet the first Koch prong.  The problem is that the

"confidential relationship" was with Dr. Benson, not Dr. Doubilet.  In such circumstance,

assuming Dr. Benson to be an expert who is "affiliated with [the] expert[] for the opposing

party," guided by Rexnord Corp., 111 F. Supp. 2d at 75, the Court's focus must rest on whether

any substantive confidential information about the case was exchanged between Dr. Doubilet

and his professional "affiliate," Dr. Benson.

---

[5] There is one exception – based on the *in camera* review, the Court notes that the February 23, 2021, email states expressly what Dr. Doubilet would be asked to review, while the Defendants' memorandum in support of the motion carefully omits that information.  In light of Dr. Doubilet's area of expertise (obstetric radiology), which the motion discloses, I find that this potentially unwaived work product is of such *de minimis* incremental value that it does not support a finding that, standing alone, it amounts to information that is sufficiently confidential as to satisfy the second Koch prong.

There is no question that the identity of an expert like Dr. Benson, who is consulted but who will not testify, is work product that is subject to qualified protection against discovery. Burt v. AVCO Corp., Case No. CV-15-3355-MWF-PJWx, 2015 WL 12912366, at *4 (C.D. Cal. Nov. 17, 2015); see Fed. R. Civ. P. 26(b)(4).  However, in the circumstances here, until the filing of the instant motion, Dr. Doubilet knew only that his wife has been contacted and had a meeting; he did not know that she had been formally consulted, formed an opinion, and then was not designated to testify.  It is pertinent that counsel for the parties plainly did not consider there to have been any breach of an agreement of confidentiality when Dr. Doubilet checked with his wife before responding to the February 23, 2021, email, after which he advised the inquiring attorney of that bare fact – that Dr. Benson had been contacted about the same case.  Pivotal to the Court's determination is the reality that the additional facts – that Dr. Benson was retained, reviewed documents, provided an opinion, was compensated, but was not engaged as a testifying expert – were all placed by Defendants in the public record in connection with the unsealed filing of this motion to disqualify.  ECF No. 40 at 4.  Thus, to the extent that the extremely limited information disclosed by Dr. Benson to Dr. Doubilet was confidential, its work-product protection was waived when the instant motion was filed without asking for leave to place the work product under seal.[6]  See Thompson, 594 F. Supp. 3d at 1187.

      **C.**        **Balancing Policy Objectives and Fundamental Fairness**

---

[6] This decision narrowly determines only that, in the unique circumstances of this case, the limited information that Dr. Benson disclosed to Dr. Doubilet, which he then disclosed to counsel for Dr. Anania, was not a disclosure of confidential information sufficient to justify disqualification of Dr. Doubilet as a testifying expert for Plaintiffs.  I do not address whether the work-product protection for this information and the other information revealed by Defendants in their memorandum was waived for any other purpose.

Balanced against Defendants' tepid showing that they formed an objectively confidential relationship first with Dr. Benson and then with Dr. Doubilet that resulted in the disclosure to him of confidential work product are an array of facts tipping against disqualification.

For starters, Plaintiffs engaged Dr. Doubilet in good faith, using a "blind" approach suggested as a best practice to procure a neutral opinion; there is no troubling conduct or sharp practice such as the court found in Koch Ref. Co., 85 F.3d at 1183.  Dr. Doubilet certainly qualifies as a physician expert with "useful specialized knowledge," which the court noted as a reason auguring against disqualification in Palmer, 144 F.R.D. at 67.[7]  There is no whiff of taint impacting Dr. Doubilet's opinion in that his affidavit and report establish that it was formed based on the "blind" review.  Disqualification would be profoundly disruptive to this case and seriously prejudicial to Plaintiffs, in that it would tip over their expert selection and effectively restart a process that could result in a delay of at least eight months.[8]  Further, as long as the fact finder is buffered (per the Order below) from learning of and speculating about Defendants' work product – that Dr. Benson, Dr. Doubilet's affiliate, gave an opinion that Dr. Kowalik opted not to present at trial and that Dr. Anania identified Dr. Doubilet as a potentially well-qualified expert and then opted not to present the case to him upon learning of the contact with Dr. Benson – the Court finds that there is nothing adversely impactful on judicial integrity resulting from Dr. Doubilet's testifying as Plaintiffs' expert.

---

[7] This factor is particularly pronounced in the unusual circumstances of this case in that all three parties (Plaintiffs, Fertility/Dr. Kowalik and Dr. Anania) independently selected for contact as a potential expert one or the other of the husband/wife team of Dr. Doubilet and Dr. Benson.

[8] The Court bases this estimate on the reality that Plaintiffs found Dr. Doubilet sometime in March 2022 and he signed his report as a testifying expert at the end of October 2022, a period of about seven months.  Defendants' responsive disclosures were due at the end of November 2022.  Thus, the timeline for the expert process that would have to be repeated took at least eight months.

In light of these considerations, the Court finds that the balance of the competing policy objectives and interests of fundamental fairness tip decisively in favor of denying Defendants' motion.

## IV.    Conclusion

Based on the foregoing, considering the <u>Koch</u> factors, the competing policy objectives and fundamental fairness, the Court denies Defendants' motion to disqualify Dr. Doubilet. ECF No. 39. Further, because the Court found Dr. Doubilet's affidavit to be useful and relied on it as indicated above, as well as because it contains no confidential information not already disclosed in substance by Defendants, the Court denies Defendants' motion to strike it. ECF No. 48. Finally, to sustain the confidentiality of the work product placed in issue by these motions, the Court hereby orders that, during further proceedings and the trial of this matter, counsel for Plaintiffs and Dr. Doubilet shall refrain from referring either to the contact by counsel for Dr. Kowalik with Dr. Benson or the contact by counsel for Dr. Anania with Dr. Doubilet, unless the door is first opened by Defendant(s).


/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
January 11, 2023